**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **KELLY GUTIERREZ, as next friend and on behalf of L.G., a minor,** | § § § | |
| **VS.** | § § § | |
| **LUNDBECK, LLC, LUNDBECK PHARMACEUTICALS SERVICES, LLC, and H. LUNDBECK A/S** | § § § § | **NO. ____________** <br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW KELLY GUTIERREZ, as next friend and on behalf of L.G., a minor, complaining of the above listed Defendants, and for causes of action would respectfully show as follows:

## I. Introduction

1. Clobazam is marketed under the names ONFI and Frisium by Defendants. ONFI is a prescription medicine used along with other medicines to treat seizures associated with Lennox-Gastaut syndrome in people two years of age or older. ONFI was approved for use in the United States in October 2011.

2. L.G. is nine years old. He suffers from epilepsy/seizure disorder. In an effort to control his seizures, his doctors prescribed ONFI, which was successfully controlling his symptoms. However, 3 weeks into the treatment, L.G.'s mother noticed a change in the color of the pigmentation in L.G.'s eyes. Several days later, after what looked like chicken pox developed all over his body, L.G. began having difficulty breathing and was taken to the emergency room. The next day, L.G.'s mouth filled with severe blisters. Just days later, L.G.'s

condition had worsened to the point that he was air lifted to Shriner's Burn Hospital in Galveston, where he was placed in the intensive care unit. The surgeries began the next day. So far, L.G. has had four surgeries, including pig skin grafts to replace all the skin that has sloughed off. He now has stitches in his eyes, is blind, horribly disfigured, and suffers horrific pain on a daily basis.

3. Due to use of ONFI, L.G. developed Steven Johnson Syndrome (SJS) that escalated to TENS (toxic epidermal necrolysis). SJS is a rare, serious disorder in which skin and mucous membranes react severely to a medication. SJS begins with flu-like symptoms, followed by painful red or purplish rash that spreads and blisters causing the human skin to die and shed. SJS is treated as a burn, which is why L.G. is currently being treated at Shriner's in Galveston.

4. In December 2011, Defendants completed a study linking the use of Frisium to SJS and TEN. Despite having the information, no such information was passed on to medical professionals who might choose to prescribe ONFI to patients like L.G.

## II.   Parties

5. Plaintiff Kelly Gutierrez is the mother of L.G., and is a citizen of Texas.

6. Defendant Lundbeck, LLC is a Delaware limited liability company with its principal place of business at 4 Parkway North, Suite 200, Deerfield, IL 60015, and may be served through its agent for service of process: Thomas D. Forrester, 4 Parkway North, Deerfield, IL 60015.

7. Defendant Lundbeck Pharmaceuticals Services, LLC is an Illinois limited liability company with its principal place of business at 4 Parkway North, Deerfield, IL, 60015, and may be served through it agent for service of process: Staffan Schuberg, 4 Parkway North, Deerfield, IL 60015.

8. Defendant H. Lundbeck A/S is a Dutch corporation with its principal place of business at Ottiliavej 9, 2500 Valby, Denmark. Denmark is a signatory to the Hague Convention. Thus, H. Lundbeck A/S may be served via an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process, at its home office address in Denmark.

## III. Jurisdiction

9. This Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332 because there is total diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

10. Venue is proper pursuant to 28 U.S.C. §1391(a)(2) in that Plaintiffs' claims arose from events taking place within this judicial district, and Plaintiffs are in this District and Division.

## IV. Statement of Facts

11. L.G. Gutierrez was born on June 20, 2004 and was subsequently diagnosed with epilepsy/seizure disorder. L.G.'s family doctor prescribed L.G. with Depakote and Neurontin to manage the seizures, and at one time thought L.G. might grow out of his seizure disorder. L.G. lived a relatively normal, happy life prior to 2012.

12. In 2012, L.G.'s life would forever change when his doctor prescribed him a medication recently approved by the FDA—ONFI—to manage his seizures. L.G. began taking the medication on January 3, 2012, and continued to take 10 milligrams of the medication twice daily for approximately three weeks. While the medication controlled L.G.'s seizures, harsh side effects of the medication began to plague L.G. within this short period of time.

13. Between February 7th and February 9th, 2012, L.G. went to the doctor everyday for ailments ranging from sicknesses resembling simple pinkeye, chicken pox, and mouth blisters.

L.G., on all three occasions, consulted his doctor, obtained treatment for these ostensibly non-life threatening conditions, and headed home.

14. On February 10, 2012, L.G. headed to his doctor for the fourth straight day. His doctor finally understood the severity of all of these cumulative symptoms and indicated that L.G. needed to be rushed to the hospital. L.G. was airlifted to Shriner's Burn Hospital in Galveston where he was immediately place in the ICU. Doctors at the hospital diagnosed L.G. with Steven Johnson Syndrome, which has since escalated into TENS (toxic epidermal necrolysis).

15. Since February 10, 2012, L.G. has constantly suffered, undergoing no less than four skin grafts to replace his decimated skin, with more skin grafts already planned. L.G. has also undergone four eye surgeries. L.G. is now blind.

16. While Doctors indicate that L.G. is expected to survive, he will be horribly disfigured for the rest of his life. Despite not having the use of his eyes, L.G. will need to apply manufacturer tears to his eyes every hour for the rest of his life, as his tear ducts have been destroyed as a result of the disease(s). L.G. is still at the hospital today.

17. ONFI (coblazam) is an oral anti-epileptic drug of the benzodiazepine class approved by the FDA for adjunctive treatment of seizures associated with Lennox-Gastaut Syndrome on October 21, 2011. ONFI became available for prescription in the United States on January 3, 2012 and has been classified by the FDA as a schedule four substance.

18. The effectiveness and side effects of ONFI were established in two multicenter controlled studies of patients 2 years of age and older. These limited studies, which were the basis of FDA approval, did not report that Stevens Johns Syndrome is a side effect of taking the medication.

19. Clobazam is a benzodiazepine derivative, which is marketed under the names Frisium, Urbanol, and ONFI. Frisium and ONFI are both manufactured by Defendants. On December 11, 2011, Defendants released a revision of a Product Monograph regarding Frisium, indicating that "[r]eports have been received of Stevens-Johnson Syndrome (SJS), including toxic epidermal necrolysis (TEN)" related to Frisium's use. In the Product Monograph, Defendants cited to a medical journal reporting the onset of Stevens Johnson Syndrome triggered by a combination of clobazam (also the active ingredient in ONFI), lamotrigine, and valproic acid. Moreover, this document explicitly reflects this was not an isolated occurrence, opining that Stevens Johnson syndrome and TEN are "Uncommon Side Effects"—as opposed to "Very Rare" side effects—of Frisium use.

20. On information and belief, while Lundbeck knew that Clobazam causes Stevens Johnson Syndrome, as evidenced by its Product Monograph for Frisium, it has withheld all warnings related to the link between taking ONFI and the onset of Stevens Johnson Syndrome and TEN.

21. Moreover, the link between the use of anti-epileptic medications, generally and Stevens Johnson Syndrome/TEN has been widely established. Studies have shown that the period of increased risk for the disorder is largely confined to the few months of treatment, which is consistent with Plaintiff's injury timeline.

22. Defendants misled and failed to adequately warn ONFI users of its potential serious dangers, which Defendants knew could result from consuming its product. Defendants instead violated the applicable code of federal regulations by failing to include a warning that these life threatening conditions were ***known*** side effects from the ingestion of ONFI. Knowing that SJS and TENS were side effects of ONFI, the Defendants failed to amend their product label to bring it in

compliance with federal law. Accordingly, L.G.'s prescribing physician was deprived of the ability to fully assess the risks of ONFI when making the decision to prescribe these drugs due to Defendants' deficient and inadequate warning.

23. As a result of the claims made by Defendant regarding the safety and effectiveness of Defendant's ONFI product, L.G. suffered and will continue to suffer from severe painful and permanent injuries, specifically Stevens Johnson Syndrome and TEN.

24. These conditions and resulting injuries were caused by L.G.'s ingestion of Defendants' product ONFI.

25. Had Plaintiff known of the risks and dangers associated with Defendants' product ONFI, or had Defendants disclosed such information to Plaintiff, Plaintiff would not have taken ONFI and would not have suffered the aforementioned adverse reaction and subsequent complications.

26. Upon information and belief, Defendants' will reap large profits from manufacturing ONFI, while concealing from the public, knowledge of the potential hazard associated with the product.

27. Defendants failed to perform adequate testing on ONFI, that would have shown that the medication possessed serious side effects to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed in to the stream of commerce and/or should have provided full and proper warnings accurately and fully reflecting the scope and severity of symptoms of those side effects.

28. Prior to the manufacturing, sale and distribution of Defendants' product ONFI, Defendants, through their officers, directors and managing agents, had notice and knowledge from several sources, prior to the marketing and sale of ONFI to Plaintiff, that the products presented

substantial and unreasonable risks of harm to consumers. As such, said consumers, including Plaintiff, were unreasonably subjected to risk of injury or death from the consumption of the medication.

29. Despite such knowledge, Defendants, through their officers, directors, and managing agents, for the purpose of increasing sales and enhancing profits, knowingly and deliberately failed to remedy the known defects of ONFI and failed to adequately warn the public, including Plaintiff, of the serious risk of injury occasioned by the defects inherent in the medication. Defendants and their officers, agents and managers intentionally proceeded with the manufacturing, sale and marketing of ONFI, knowing that persons would be exposed to serious potential danger, in order to advance their own pecuniary interests. Defendants conduct was wanton and willful, and displayed a conscious disregard for the safety of the public and particularly of Plaintiff, entitling Plaintiff to exemplary damages.

30. Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff, who requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct, in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors and managing agents of Defendants.

31. As a result of ingesting the products manufactured, supplied, and/or sold by Defendants, Plaintiff suffered severe, painful and permanent injuries, specifically a severe adverse reaction of Stevens Johnson Syndrome and TEN. As a result of the dangerously defective nature of ONFI at the time of manufacture and distribution, Plaintiff, by using ONFI, sustained the injuries and damages alleged herein.

32. As a direct and proximate result of Defendants' negligence as described herein, Plaintiff has sustained harm, including permanent and debilitating injuries, specifically, systematic symptoms of Stevens Johnson Syndrome and TEN, and resultant injury, harm and economic loss as set forth within.

## V. CAUSES OF ACTION

### A. STRICT PRODUCTS LIABILITY—FAILURE TO WARN

33. Plaintiff incorporates by reference each and every paragraph of this complaint as set forth in full in this cause of action.

34. Defendants manufactured, marketed, distributed and supplied the ONFI. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks associated with using the medication.

35. ONFI was in the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of Stevens Johnson Syndrome, TEN and other risks associated with its use.

36. As a direct and proximate result of the defective condition of ONFI, as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrong doing and actions of Defendants described herein, Plaintiff suffered personal injury, damages and economic loss as alleged herein.

37. Upon information and belief, Defendants knew of the defective nature of ONFI, but continued to design, manufacture, market, and sell the medication to maximize sales and profits at the expense of public health and safety, in knowing, conscious, and deliberate disregard

of the foreseeable harm caused by the medication, and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of ONFI.

38. Defendants failed to warn the public, Plaintiff, or Plaintiff's prescribing physician of the dangerous propensities of ONFI, which were known or should have been known to Defendant, as they were scientifically readily available.

39. Defendants knew and intended for ONFI to be prescribed by physicians and be used by persons with a prescription, without any inspection for defects. Defendants also knew that physicians and users, such as Plaintiff, would rely upon the representations made by Defendants on the product labels and in other promotion and sales materials upon which Plaintiff and his prescribing physician did so rely.

40. As a direct and proximate result of Defendants' sale of ONFI without adequate warnings regarding the risk of Stevens Johnson Syndrome, TEN and other risks associated with its use, Plaintiff suffered harm as alleged herein, including ascertainable economic loss, including purchase price of Defendant's product ONFI, out-of-pocket costs of medical tests and treatment, future medical care and/or services, and other costs incidental to Plaintiff's ingestion of ONFI, as well as extreme pain and suffering, loss of enjoyment of life, and other damages.

41. Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' product ONFI, was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

## B. STRICT PRODUCTS LIABILITY—DEFECT IN DESIGN OR MANUFACTURE

42. Plaintiff incorporates by reference each and every paragraph of this complaint as set forth in full in this cause of action.

43. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of ONFI, which was defective and unreasonably dangerous to consumers.

44. ONFI was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

45. The product ONFI manufactured, supplied, and/or sold by Defendants was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous because the foreseeable risks exceeded the benefits associated with its design or formulations of the product.

46. Upon information and belief, Defendants actually knew of the defective nature of ONFI, but continued to manufacture, market and sell it to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by the product.

47. There were safer alternative methods and design for the like product.

48. At all times material, ONFI was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

   a. When placed in the stream of commerce, ONFI contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby

subjecting users and/or consumers of the drug, including Plaintiff, to risks, exceeding the benefits of the medication;

b. The drug was insufficiently tested;

c. The drug caused unreasonable side effects that outweighed any potential utility;

d. The drug was not accompanied by adequate labeling, instructions for use and/or warnings to fully apprise the medical, pharmaceutical and/or scientific communities, and users and/or consumers of the drug, including Plaintiff, of the potential risks associated with its use, thereby rendering Defendants liable to Plaintiff; and

e. In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that ONFI should not have been marketed in that condition.

49. At all times material, ONFI was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed with the expectation to reach, and did reach, users and consumers of the medication across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

50. At all times, Plaintiff used ONFI for its intended or reasonably foreseeable purpose. As a direct, legal and proximate and producing result of the defective and unreasonably dangerous condition of ONFI, Plaintiff has sustained harm, including, among other things, acute, permanent and debilitating injuries, for which Plaintiff is entitled to damages. These injuries

have caused extensive pain and suffering, severe emotional distress, substantially reduced Plaintiff's ability to enjoy life, and caused Plaintiff to expend substantial sums of money for medical, hospital, and related care.

51. As a direct, legal and proximate and producing result of the defective and unreasonably dangerous condition, Plaintiff required reasonable and necessary health treatment and services and incurred expenses for which Plaintiff is entitled to damages.

52. As a direct and proximate cause of the design and manufacturing defects of Defendants' product ONFI, Plaintiff suffered harm as alleged herein, including ascertainable economic loss, including the purchase of Defendants' product ONFI, out-of-pocket costs of medical tests and treatment, future medical care and/or services, and other costs incidental to Plaintiff's ingestion of harmful and defective products, as well as extreme pain and suffering, loss of enjoyment of life, and other injuries.

53. Defendants' aforementioned conduct was committed with knowing, conscious and deliberate disregard for the rights and safety of consumers such as Plaintiff. This conduct includes Defendants' withholding and/or misrepresenting information to the public, including Plaintiff. This information was material and relevant to the harm in question, and punitive damages in the amount determined at trial are appropriate to punish Defendants and deter them for similar conduct in the future.

**C. NEGLIGENCE**

54. Plaintiff incorporates by reference each and every paragraph as set forth in full in this cause of action.

55. Defendants owed a duty to consumers of ONFI, including Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing, marketing, supplying, distributing,

and selling ONFI, including a duty to ensure that ONFI did not cause users to suffer from unreasonable, unknown, and/or dangerous side effects.

56. Defendants failed to exercise reasonable care in the warning, designing, testing, labeling, manufacturing, marking, selling, sale, and/or distribution of ONFI and breached its duty to Plaintiff in that, and not by way of limitation, they failed to warn of the known risks associated with the risks of ONFI and did not exercise an acceptable standard of care—what a reasonable manufacturer would have known or warned about. Moreover, the product lacked sufficient warnings regarding the hazards and dangers to users of ONFI, and failed to provide safeguards to prevent injuries sustained by Plaintiff. Defendants failed to properly test ONFI prior to its sale, and as a result subjected users to an unreasonable risk of injury when those products were used as directed.

57. Defendants additionally breached their duty and were negligent in their actions, misrepresentations, and omissions towards Plaintiff in the following ways:

   a. Failed to exercise due care in designing, developing, and manufacturing ONFI to avoid the aforementioned risks to individuals involving those products;

   b. Failed to include adequate warnings with ONFI to alert Plaintiff and other consumers of its potential risks and side effects;

   c. Failed to adequately and properly test ONFI before placing it on the market;

   d. Failed to conduct sufficient testing on ONFI, which if properly performed would have shown that ONFI had serious side effects, including, but not limited to Stevens Johnson Syndrome, TEN, and other serious side effects;

   e. Failed to adequately warn Plaintiff and physicians that use of ONFI carried a risk of Stevens Johnson Syndrome, TEN, and other serious side effects;

  f. Failed to provide adequate post-marketing warning or instructions after Defendants knew or should have known, of the significant risk of reactions to the use of ONFI;

  g. Placed an unsafe product into the stream of commerce; and

  h. Was otherwise careless or negligent

58. Defendants knew or should have known that ONFI caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold, and/or distributed ONFI, despite knowing of its unreasonable risks of injury.

59. Defendants knew or should have known that consumers such as Plaintiff would suffer injury as a result of Defendants' failure to exercise reasonable care as described above.

60. Upon information and belief, Defendants knew or should have known of the defective nature of ONFI, as set forth herein, but continued to design, manufacture, market, and sell ONFI so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by the medication.

61. Defendants failed to disclose to Plaintiff and the general public facts known or available to them in order to ensure continued and increased sales of ONFI. This failure to disclose deprived Plaintiff of the information necessary for Plaintiff to weigh the true risks of taking ONFI against the benefits.

62. As a direct and proximate result of Plaintiff's use of ONFI, Plaintiff suffered serious bodily injury including, but not limited to, Stevens Johnson Syndrome and TEN.

63. By virtue of Defendants' negligence, Defendants have directly, foreseeably and proximately caused Plaintiff to suffer serious bodily injury. As a result, the imposition of punitive damages against Defendant is warranted.

64. As a direct and proximate result of Defendants' negligence, Plaintiff suffered harm as alleged herein, including severe pain and suffering, loss of enjoyment of life, ascertainable economic loss, including the purchase price of ONFI, out-of-pocket costs of medical tests and treatment, future medical care and/or services, and other costs incidental to Plaintiff's ingestion of harmful and defective products.

**D. GROSS NEGLIGENCE**

65. Plaintiff incorporates by reference each and every paragraph of this complaint as set forth in full in this cause of action.

66. Defendants had the duty to exercise reasonable care in warning about, designing, testing, manufacturing, marketing, labeling, selling, and/or distributing its ONFI product, including a duty to ensure that ONFI did not cause users to suffer from unreasonable and dangerous side effects.

67. Defendants failed to exercise reasonable care in warning about, designing, testing, manufacturing, marketing, labeling, selling, and/or distributing ONFI in that they:

a. Failed to provide adequate warnings with OFNI regarding its possible risks and adverse effects, as well as the comparative severity and duration of such adverse effects;

b. Failed to adequately and properly test ONFI before placing it on the market;

c. Failed to conduct sufficient testing on ONFI, which if properly performed would have shown that ONFI had serious side effects, including, but not limited to Stevens Johnson Syndrome, TEN, and other serious side effects;

d. Failed to adequately warn Plaintiff and physicians that use of ONFI carried a risk of Stevens Johnson Syndrome, TEN, and other serious side effects;

e. Failed to provide adequate post-marketing warning or instructions after Defendants knew or should have known, of the significant risk of reactions to the use of ONFI;

f. Placed an unsafe product into the stream of commerce; and

g. Was otherwise grossly negligent;

68. As a direct and proximate result of the Defendants' sale of the product ONFI without adequate warnings regarding the risk of Stevens Johnson Syndrome, TEN and other risks associated with its use, Plaintiff suffered harm as alleged herein, including ascertainable economic loss, including purchase price of Defendant's product ONFI, out-of-picket costs of medical tests and treatment, future medical care and/or services, and other costs incidental to Plaintiff's ingestion of Defendants' harmful and defective product ONFI. In addition, Plaintiff has been rendered blind, blistered and scarred, both internally and externally. All of said injuries have caused and continue to cause Plaintiff intense anxiety, distress, fear, pain, suffering and distress secondary to the physical injury and damages. In addition, Plaintiff has suffered other injuries; the exact nature and extent are not known at this time.

69. As a direct result of the gross negligence, willful and wanton misconduct, and/or other wrongdoing and actions of Defendants, which constitute a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to the consequences,

Plaintiff will in the future be required to obtain medical and/or hospital care, attention and services. As a result, Plaintiff may incur expenses for such health care treatment in an amount not yet ascertained.

70. Defendants' aforementioned conduct was committed with knowing, conscious and/or deliberate disregard for the rights and safety of consumers such a Plaintiff, thereby entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and deter them from similar conduct in the future. Defendants continued to promote the efficacy and safety of Defendants' product ONFI, while providing little or no warnings, and downplayed the risks, even after Defendants knew of the risks and injuries associated with their use.

## VI. DAMAGES

As a direct and proximate cause of Plaintiff's ingestion and use of Defendants' product ONFI, Plaintiff sustained the following damages and seeks recovery thereon:

a. Past and future emotional distress including, without limitation, justifiable fear of disease;

b. Loss of enjoyment of life;

c. Physical and mental pain and suffering;

d. Inconvenience;

e. Past and future mental anguish;

f. Physical Pain and Suffering; and

g. Past Medical Expenses; and

h. Punitive and Exemplary Damages to the fullest extent permitted by law

## VII. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for relief as follows:

a. Awarding actual and compensatory damages to Plaintiffs incidental to Plaintiff's and purchase and ingestion of Defendants' product in amount to be determined at trial;

b. Awarding exemplary damages to Plaintiff;

c. Awarding pre-judgment and post-judgment interest to Plaintiff;

d. Awarding the costs and expenses of litigation to Plaintiff;

e. Awarding reasonable attorneys' fees and costs to Plaintiff as required by law; and

f. For such further relief as this Court deems necessary, just and proper.

Respectfully submitted,

By: *____/s/ Anthony G. Buzbee____*

ANTHONY G. BUZBEE
SD TX ID No. 22679
JP Morgan Chase Tower
600 Travis Street, Suite 7300
Houston, Texas 77002
Telephone: 713.223.5393
Facsimile: 713.223.5909
www.txattorneys.com